[Civ. Nos. 28100, 28237.   Second Dist., Div. Three.   Jan. 13, 1966.]

E. JOSEPH LINDER, Plaintiff and Respondent, v. VOGUE INVESTMENTS, INC., Intervener and Appellant.

(Two Cases.)

Millen & Gerstenfeld and Gerald Gerstenfeld for Intervener and Appellant.

Brock & Shapero, Edwin S. Saul and Martin M. Shapero for Plaintiff and Respondent.

KAUS, J.—Frustrated in several attempts to intervene in an action between E. Joseph Linder, as plaintiff, and Crescent Homes, as defendant, Vogue Investments Inc., the purported intervener, has filed two appeals, which were consolidated by order of this court.

On June 11, 1963, plaintiff filed his first amended complaint against Crescent Homes, designated as a limited partnership, for money loaned in the sum of $29,940. The complaint alleged that one Jack Katz was the general partner and Vogue Investments, Inc. (Vogue), the limited partner. Summons was served on Katz who did nothing to cause Crescent Homes to appear and a default was entered on July 2. When Vogue learned that Katz would not defend the action it filed a motion to intervene and to vacate the default with unquestioned diligence. The motion was denied on July 30, 1963, and a motion for reconsideration was denied September 24, 1963. These two rulings form the basis of the first appeal.[1] The second appeal was taken from an order made December 9, 1963, denying a motion of Vogue to vacate a default judgment entered on October 6, 1963. The basis for that motion will be discussed later.

Vogue sought leave to intervene for a variety of reasons. They are: 1. the limited partnership, which existed only dur-

[1]The notice of appeal was filed October 31, 1963, more than 60 days after the first denial of Vogue's motion on July 30, 1963. The appeal from that order must therefore be dismissed. Since the court considered the motion to reconsider on its merits, its ruling thereon is appealable. *Bice* v. *Stevens,* 160 Cal.App.2d 222, 226 [325 P.2d 244].

ing the calendar year 1961, did not in fact owe the sum demanded by plaintiff, but the debt was owed by Jack Katz personally. Katz, who had filed a voluntary petition in bankruptcy in January of 1963 had failed in his duty to defend the action for the benefit of the limited partnership and his failure to do so jeopardized Vogue's interest in the limited partnership. 2. Any judgment obtained against the limited partnership would be a fraud on the court. 3. Plaintiff's sole purpose in bringing the action against the limited partnership was to obtain a fraudulent judgment against it, with the purpose of somehow, in later proceedings, fastening liability therefor on Vogue.

As noted, concurrently with the motion for leave to intervene, Vogue sought to set aside the default, claiming a noncompliance with certain provisions of section 410 of the Code of Civil Procedure in the service on Katz.

Plaintiff resisted the motion to intervene, claiming in his written opposition that a limited partner was not a proper party in an action against a limited partnership (Corp. Code, § 15526), that the powers of a limited partner enumerated in section 15510 of the Corporations Code are exclusive, that the right to defend a lawsuit is not one of them and that permitting Vogue to intervene would be to permit it to contribute services to the limited partnership in violation of section 15504 of the Corporations Code. Plaintiff also offered to withdraw his opposition to the intervention if Vogue would defend as a general partner.

The original denial of Vogue's motion is reflected in a minute order of July 30, 1963, which simply reads: "motion denied." The minute order denying Vogue's motion to reconsider is more explicit; it reads as follows: "Limited partners are not bound by the obligations of the partnership (Corp. Code sec. 15501) and have no power to litigate or defend the partnership obligations. (Corp. Code sec. 15526)."

■ It seems clear from the above order that the ruling denying intervention was based on the view urged by plaintiff that Vogue as a limited partner had no power to intervene and that the court had no discretion in the matter. This view is not shared by us. The statement in section 15526 of the Corporations Code that a limited partner is not a proper party in an action against the limited partnership is certainly not the equivalent of a statement that a limited partner may not, in a proper case, intervene in such an action. We know of no rule which equates the right to intervene on

behalf of a defendant with being a proper party whom the plaintiff could have sued had he chosen to do so.[2]

We do not believe that the Uniform Limited Partnership Act and particularly section 15510 purport to state all of the rights of limited partners, under all circumstances. We are encouraged in this belief by section 15529 of the Corporations Code, reading as follows: "In any case not provided for in this act the rules of law and equity, including the law merchant, shall govern." If it were the law that a limited partner who may have a substantial investment in the partnership, must sit idly by and watch it disappear because the general partner refuses to defend an unmeritorious or collusive action against the partnership, something would have to be done about it.

We find the analogy to the many cases which, under certain conditions, permit corporate shareholders to defend on behalf of the corporation to be quite persuasive, though not necessarily on all fours. (For an exhaustive annotation discussing many California cases see 33 A.L.R.2d 473.) In the leading California case, *Eggers* v. *National Radio Co.*, 208 Cal. 308 [281 P. 58], the Supreme Court, in speaking of a situation where the corporation makes no defense to an action in which a shareholder tries to intervene on behalf of the corporation said: "It would be a reproach to the law if the stockholders in such a case as this were remediless." (*Ibid.*, p. 314.)

It is perhaps worth noting that plaintiff's papers opposing intervention in the trial court resisted the attempt only on the technical ground that a limited partner could never intervene and did not take issue with Vogue's factual assertions which amounted to a charge of fraud and tacit collusion between plaintiff and the general partner.

It is true, of course, as pointed out by plaintiff, that the quantum of Vogue's alleged direct interest in the litigation, as presented to the trial court, is fairly nebulous. It does not appear that the limited partnership owns any asset against which plaintiff could levy execution, thereby reducing the value of Vogue's interest. It is obvious, however, that Vogue's interest in the success or failure of plaintiff's action

---

[2]For example, in *Johnson* v. *Hayes Cal Builders, Inc.*, 60 Cal.2d 572, [35 Cal.Rptr. 618, 387 P.2d 394], the intervener was the surety on defendant's release of attachment bond, a party not having the remotest connection with the litigation at its outset.

against the limited partnership is a very vital one on the showing made, which was amplified by factual concessions at the oral argument of this case: plaintiff claims—and it is conceded that he has already filed an action embodying such claim—that Vogue withdrew its contribution to the limited partnership at a time when it was insolvent. If true, this withdrawal would have violated sections 15516 and 15523 of the Corporations Code and subjected Vogue to a liability to return such contribution at the instigation of the limited partnership or a creditor thereof. (Corp. Code, § 15517; *Donroy, Ltd.* v. *United States,* 301 F.2d 200, 205; *Kittredge* v. *Langley,* 252 N.Y. 405 [169 N.E. 626, 67 A.L.R. 1087].) If in such an action—concededly being litigated at this very moment between the parties—Vogue cannot go behind the default judgment and try to establish that the alleged debt from the partnership to plaintiff never existed, it will be seriously prejudiced by the default judgment which Katz had permitted the partnership to suffer.

This last issue which undoubtedly engages the attention of counsel in the new action is one that we feel we should not answer in this opinion. Research reveals no California case in point. In *Kittredge* v. *Langley, supra,* Justice Cardozo assumed that the judgment-creditor-plaintiff in such an action may be forced, if the defendant so chooses "to prove the debt anew without reference to the judgment." (*Ibid.,* p. 412.) On the other hand, if the action against the limited partner for the return of a contribution is viewed as analogous to an action to set aside a fraudulent conveyance, the law becomes blurred. We simply refer counsel to what appear at first blush to be conflicting views expressed in *Burton* v. *Mullenary,* 147 Cal. 259, 262 [81 P. 544]; *Hills* v. *Sherwood,* 48 Cal. 386, 392 and *Freeman* v. *LaMorte,* 148 Cal.App.2d 670, 674 [307 P.2d 734]. (See also 23 Cal.Jur.2d, Fraudulent Conveyances and Transfers, § 89; 24 Am.Jur., Fraudulent Conveyances, § 181, p. 311; 37 C.J.S., Fraudulent Conveyances, § 349 (b), p. 1182.)

Of course, if in the new action Vogue could insist that plaintiff prove the existence of the debt as a partnership debt without help from the judgment in this action, no harm would have been done to Vogue by the denial of leave to intervene, but since that is debatable, we think the wiser course to pursue is to reverse the order denying intervention and to permit the trial court to exercise its discretion in the matter of granting leave to intervene and setting aside the

default on any of the grounds enumerated in section 473 of the Code of Civil Procedure.[3]

Plaintiff also claims that intervention must be denied to Vogue because the case has proceeded to judgment. The simple answer to this contention is that the case proceeded to judgment after the court denied intervention, a denial which was a final judgment as far as Vogue was concerned and appealable as such. (*Bowles* v. *Superior Court*, 44 Cal.2d 574, 582 [283 P.2d 704].) If the court was in error in denying that motion to intervene, the later judgment cannot make that error moot. In any event it is rather apparent from matters referred to below in connection with the second appeal, that the court would have vacated the default judgment had it felt that Vogue had any standing before it.

Although plaintiff makes nothing of the point, the fact is that intervention was sought after default and we have decided to discuss this in order to bring it out into the open and prevent it from being raised as a barrier in further proceedings below.

In *Johnson* v. *Hayes Cal Builders, Inc.,* 60 Cal.2d 572 [35 Cal.Rptr. 618, 387 P.2d 394], intervention was sought about five months after a default judgment had been entered, seven months after the entry of the default. Although the Supreme Court ultimately held that the trial court's action in setting aside the default and the judgment on the motion of the intervener was erroneous, it also held that intervention as such was proper in spite of the status of the case at the time it was sought and in spite of the language of section 387 of the Code of Civil Procedure permitting intervention only "before trial." Although *Johnson* involved a case where a judgment had actually been entered, the Supreme Court refers to three of its earlier decisions, *Stern & Goodman Inv. Co.* v. *Danziger,* 206 Cal. 456 [274 P. 748]; *Martin* v. *Lawrence,* 156 Cal. 191 [103 P. 913]; *Hibernia etc. Society* v. *Churchill,* 128 Cal. 633 [61 P. 278, 79 Am.St.Rep. 73], as standing for the proposition that a default is the equivalent

---

[3]Although in Vogue's moving papers it voiced a fear that plaintiff would proceed against it on the theory that it had been, in truth, a general partner, our interpretation of the statements at the oral argument is that plaintiff is not proceeding against Vogue on that basis. The rule of *Dillard* v. *McKnight,* 34 Cal.2d 209 [209 P.2d 387, 11 A.L.R.2d 835], that a judgment against a partnership is not conclusive against a general partner not served, can therefore not be invoked by plaintiff in support of an argument that Vogue is not damaged by the denial of leave to intervene.

of a trial within the meaning of section 387 of the Code of Civil Procedure. Thus a superficial reading of *Johnson* might lead one to the conclusion that therein the court interpreted the cited cases as raising an absolute, statutory bar to intervention once the defendant's default has been entered, but we do not so interpret the case. First of all, in *Johnson* the court points out that intervention was sought more than six months after the entry of default and that therefore the intervener's motion to set aside the default and judgment could not be addressed to the trial court's discretion under the third paragraph of section 473 of the Code of Civil Procedure, but had to be based on the theory that the judgment was void on its face. Thus *Johnson* itself recognizes that an intervener can seek to set aside a default if he does so within six months after its entry.

Nor do the cited cases stand for anything different. In *Hibernia etc. Society* v. *Churchill, supra,* an administratrix was sued on notes and a mortgage executed by the decedent in his lifetime. The defendant's default was entered. Thereafter an intervener, claiming to be an heir of the deceased was permitted to file a complaint in intervention in which he prayed that the complaint be dismissed. The administratrix moved to set aside the default on a technical ground found to be invalid for reasons not pertinent here. Neither the administratrix nor the intervener ever offered to litigate the case on its merits. On motion of the plaintiff the complaint in intervention was dismissed. In affirming the Supreme Court simply said that ''under the facts above stated, [intervener] had no absolute right to intervene; and, even assuming that the court, in its discretion, might have countenanced the intervention, notwithstanding the condition of the case, it certainly did not abuse its discretion.'' (*Ibid.,* p. 636.) Further language of the court analogizing a default to a trial is clearly unnecessary to the decision.

*Martin* v. *Lawrence,* 156 Cal. 191 [103 P. 913] involved an attempted intervention by a bank which after the recording of a lis pendens to certain lands involved in the action had acquired an interest in some of the property. The defendants had defaulted at the time and when the court ascertained that the bank would make no attempt to defend the action on its merits, the complaint in intervention was dismissed. Plaintiff and defendants then stipulated to a judgment. One of the defendants appealed from the judgment and the bank appealed from the dismissal of the complaint in intervention.

The court affirmed the latter order on the basis that the bank had acquired the land after the default and after the recording of the lis pendens and because neither the defendant nor the intervener had made any effort to set aside the default. This, we believe, is a clear recognition of a right in an intervener to move to set aside a default—a right which could not exist if the default were an absolute bar to intervention.

*Stern & Goodman Inv. Co.* v. *Danziger, supra,* involved the dismissal of an appeal from an order dismissing a complaint in intervention because there was no authenticated record before the court showing the making of such an order; but having stated that it had no proper record before it, the court discussed the merits of the appeal anyway. Again the intervener was the successor in interest of a defendant who was in default which, the court noted, precluded him from intervening *as a matter of right.* This of course is a far cry from saying that intervention, after default, cannot be had within the trial court's discretion.

We would not presume to dictate to the trial court how its discretion should be exercised in the present case. While the showing of diligence by Vogue was most compelling, unhappily over two years have passed since then and many matters may be brought to the trial court's attention at the next hearing which might have a bearing on its future action.

█ We now turn to the matter of the default judgment. Admittedly this judgment was entered by the clerk at a time when there was in effect a stipulation between counsel that plaintiff would not seek a judgment pending certain settlement negotiations. Plaintiff claims that the clerk entered the judgment without his knowledge, but refused to do anything to have it set aside, because at the time Vogue discovered that judgment had been entered the settlement negotiations had broken down and the vacation of the judgment and the immediate entry of a new one would be a waste of time. The trial court denied Vogue's motion to vacate the judgment by a minute order reading as follows: ''Vogue Investments, Inc. is a stranger to this action. See order of September 24, 1963, denying motion to vacate default. While not condoning any breach of faith between attorneys, Vogue Investments, Inc. has no standing in this lawsuit as a party and therefore cannot affect its course.''

It is clear that the entire proceedings involving the judgment would not have taken place, had the court exercised its

discretion to permit intervention affirmatively. The judgment should therefore be set aside.

The appeal from the order denying the motion of Vogue to intervene is dismissed. The orders denying Vogue's motions to reconsider the ruling on the motion to intervene and to vacate the judgment, and each of them, are reversed. The trial court is directed to entertain Vogue's motion to intervene and to set aside the default of Crescent Homes in accordance with the views expressed in this opinion.

Shinn, P. J., and Ford, J., concurred.