[Civ. No. 14937. Fourth Dist., Div. One. June 21, 1977.]

GERALD KOBERNICK et al., Plaintiffs,
Cross-defendants and Respondents, v.
WALTER M. SHAW, Defendant,
Cross-complainant and Appellant.

## COUNSEL

Earl H. Thompson for Defendant, Cross-complainant and Appellant.

Procopio, Cory, Hargreaves & Savitch and Todd E. Leigh for Plaintiffs, Cross-defendants and Respondents.

## OPINION

**STANIFORTH, J.**—Defendant Walter M. Shaw appeals from the default judgment entered by the court in the principal action after sustaining a demurrer to Shaw's cross-complaint without leave to amend.

Plaintiffs (Kobernick) sought to foreclose an equitable lien on real property, naming the limited partnership of Miramar and Carroll Road

Properties and First American Trust Co. and Does I through XX as defendants. Kobernick's complaint alleged a beneficial interest in real property, the legal title to which was held by the defendant First American Trust Company. They sold the property to the defendant limited partner and received back a $160,000 promissory note and chattel mortgage. Their action charges default in payment of the note. The proof of service recites that Shaw was served ". . . on behalf of Miramar and Carroll Road Properties, a limited partnership." Shaw answered for himself "sued herein as 'DOE,' " not on behalf of the limited partnership.

At the same time as answering, Shaw filed a cross-complaint on behalf of himself and fellow limited partners charging the Kobernicks and the general partner in Miramar and Carroll Road Properties, Antonio M. Pires, Jr., with a conspiracy to defraud the cross-complaining limited partners. In substance, the cross-complaint alleges a complicated arrangement between Kobernick and Pires with respect to the property whereby Kobernick received $248,200 for a 50 percent interest in the property held in trust by the First American Trust Company for which Kobernick had paid nothing. They allege an investment of $98,240.62 based upon the false representations made by the cross-defendants. They make other allegations essential to an actionable fraud. They seek, inter alia, rescission of the partnership agreement and cancellation of the promissory note. The general partner, Pires, was served out of state but did not appear.

The trial court sustained a general demurrer to the cross-complaint on the grounds that the limited partners were not proper parties to a proceeding by or against a partnership. (Corp. Code, § 15526.)

█ Preliminarily, we set forth the rules which govern a reviewing court on appeal from judgment sustaining a demurrer without leave to amend. We treat the demurrer as admitting all properly pleaded material facts. (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) Further, in reviewing an order sustaining a demurrer without leave to amend, the allegations of the complaint must be liberally construed in order to obtain substantial justice among the parties. (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249 [74 Cal.Rptr. 398, 449 P.2d 462].) We are not here concerned with a question of the cross-complainant's ability to prove his allegations. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 494 [86 Cal.Rptr. 88, 468 P.2d 216].)

Section 15526 of the Corporations Code provides: "A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership."

The general rules as expressed in the statute prohibit a limited partner from bringing a lawsuit on behalf of the limited partnership. (*Evans* v. *Galardi* (1976) 16 Cal.3d 300, 309, 311, fn. 16 [128 Cal.Rptr. 25, 546 P.2d 313].) Kobernick contends this section precludes the filing of a cross-complaint in the fact setting of this case.

If section 15526 of the Corporations Code bars limited partners from raising, by cross-complaint, the charges that they have been fraudulently induced to invest $98,240.62 hard cash in the limited partnership through collusion and a conspiracy to defraud by and between the general partner and the plaintiffs in the principal action, and where the general partner has left the state and is served in the action but does not defend, "something would have to be done about it." (*Linder* v. *Vogue Investments, Inc.* (1966) 239 Cal.App.2d 338, 341 [48 Cal.Rptr. 633].) No case is cited by either party on the question of whether Corporations Code section 15526 is to be so interpreted in this fact situation.

We look to the analogous area of intervention on the premise that if Shaw could intervene in the principal action and raise the issues he here seeks to raise by cross-complaint then he may raise the identical issues where he has been sued and served by cross-complaint. To hold otherwise would exalt form over substance.

 Code of Civil Procedure section 387 authorizes intervention where the party has a direct, not consequential, interest in the matter in litigation. Where a party to a lawsuit fails to exercise good faith in defending the action, then a party whose interest at the outset may be only consequential becomes a party with a direct interest and may therefore intervene. For example, in *Continental Vinyl Products Corp.* v. *Mead Corp.* (1972) 27 Cal.App.3d 543, 551 [103 Cal.Rptr. 806], the court spoke thus: "What would otherwise be a consequential interest not justifying intervention may become a direct interest permitting it when bad faith of a party to the litigation, the assertion by all parties to the litigation of claims adverse to the party seeking to intervene, collusion, impossibility of asserting a position that should be presented in the litigation, or similar circumstances render strict definition of direct interest likely to result in injustice."

■ The interests of shareholders justify intervention in a lawsuit against a corporation if its officers or directors fail to exercise good faith in defending an action against it. (*Shively* v. *Eureka etc. Mining Co.* (1900) 129 Cal. 293 [61 P. 939]; *Eggers* v. *National Radio Co.* (1929) 208 Cal. 308, 314 [281 P. 58].)

*Eggers* v. *National Radio Co.* (1929) *supra,* 208 Cal. 308, 314, said in discussing the situation where the corporation makes no defence to an action in which a shareholder tries to intervene on behalf of the corporation: "It would be a reproach to the law if the stockholders in such a case as this were remediless." (*Eggers* v. *National Radio Co.* (1929) *supra,* 208 Cal. 308, 314.) ■ The equitable owner of real property may intervene in an action if the trustee, legal owner, refuses to defend his title or claims adverse to the beneficiary. (*Elms* v. *Elms* (1935) 4 Cal.2d 681 [52 P.2d 223, 102 A.L.R. 811].)

Closely in point is the case of *Linder* v. *Vogue Investments, Inc.* (1966) *supra,* 239 Cal.App.2d 338, where there were several frustrated attempts at intervention by a limited partner in an action against the limited partnership. The interveners asserted the limited partnership did not owe the money as claimed in the principal action and pointed to the nonappearance of the general partner. The trial court in *Linder* denied the motion to intervene holding that the limited partner was not a proper party. The appellate court reasoned, "We do not believe that the Uniform Limited Partnership Act and particularly section 15510 purport to state all of the rights of limited partners, under all circumstances. We are encouraged in this belief by section 15529 of the Corporations Code, reading as follows: 'In any case not provided for in this act the rules of law and equity, including the law merchant, shall govern.' If it were the law that a limited partner who may have a substantial investment in the partnership, must sit idly by and watch it disappear because the general partner refuses to defend an unmeritorious or collusive action against the partnership, something would have to be done about it." (*Linder* v. *Vogue Investments, Inc.* (1966) *supra,* 239 Cal.App.2d 338, 341), then did something about it. The limited partner was authorized to intervene.

■ Kobernick would distinguish *Linder* v. *Vogue Investments, Inc.* (1966) *supra,* 239 Cal.App.2d 338, as a "motion to intervene" case; it does not involve a cross-complaint. This is a distinction without a difference. The reasons requiring intervention as a matter of simple justice of the limited partner in the *Linder* case are of equal force where a limited partner in these fact circumstances seeks to file a cross-

complaint. To say that Shaw and his fellow limited partners are required to sit idly by and allow the $98,240.62 to disappear when the general partner will not and has not defended the action would be grossly unjust. The Shaws are a most proper party to this proceeding. They have a "direct" interest in these proceedings.

■ The fact that the trial court entered its default judgment after sustaining the demurrer without leave to amend does not render this appeal moot. A similar contention was made in *Linder* v. *Vogue Investments, Inc.* (1966) *supra*, 239 Cal.App.2d 338 at page 343. The statement of *Linder* is most apposite: "The simple answer to this contention is that the case proceeded to judgment after the court denied intervention, a denial which was a final judgment as far as Vogue was concerned and appealable as such. [Citations.] If the court was in error in denying that motion to intervene, the later judgment cannot make that error moot." We paraphrase *Linder*. The trial court error in sustaining the demurrer to the cross-complaint without leave to amend did not become moot by reason of the later default judgment.

The entire procedure involving the default judgment could not have taken place had the court not erroneously sustained the demurrer without leave to amend. The judgment should therefore be set aside. (*Linder* v. *Vogue Investments, Inc.* (1966) *supra*, 239 Cal.App.2d 338.)

Judgment reversed.

Brown (Gerald), P. J., and Klein, J.,* concurred.

A petition for a rehearing was denied July 18, 1977, and respondents' petition for a hearing by the Supreme Court was denied August 18, 1977.

---

*Assigned by the Chairperson of the Judicial Council.