[No. B003988. Second Dist., Div. Six. Mar. 26, 1986.]

SAVE OXNARD SHORES et al., Plaintiffs and Appellants, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Appellant;
CITY COUNCIL OF THE CITY OF OXNARD,
Real Party in Interest and Respondent;
OXNARD SHORES OCEANFRONT LOT OWNERS
ASSOCIATION et al., Interveners and Appellants.

**COUNSEL**

Samuel Goldfarb, in pro. per., Alan G. Martin, Timothy T. Coates, Greines, Martin, Stein & Richland, Cox & Mellen, Michael David Cox, Chase Mellen III and Phil Seymour for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Peter H. Kaufman, Deputy Attorney General, for Defendant and Appellant.

Thorpe, Sullivan, Workman & Thorpe, Sullivan, Workman & Dee, Roger M. Sullivan and Henry K. Workman for Interveners and Appellants.

K. D. Lyders, City Attorney, for Real Party in Interest and Respondent.

**OPINION**

**GILBERT, J.**—Here we hold that an administrative agency, the California Coastal Commission (Commission), may set aside a portion of its previous decision in compliance with an alternative writ of mandamus.

The alternative writ issued on the petition of Save Oxnard Shores, an unincorporated association of property owners, including William Coopman, Robert Hansen and Samuel Goldfarb (collectively SOS). SOS questioned the validity of a Commission decision which conditionally certified the City of Oxnard (Oxnard) land use plan (LUP), permitting residential construction in an area known as Oxnard Shores.

Oxnard Shores Oceanfront Lot Owners Association and property owners Erik Linder and Emanuel Gyler (collectively OSOLOA) intervened before the Commission filed its return setting aside the challenged portion of its decision. Thereafter, on motion by OSOLOA, the trial court struck the Commission's return as invalid, discharged the alternative writ, and dismissed the SOS petition.

We reverse that portion of the order striking the Commission's return. We affirm the order denying OSOLOA attorney fees on its cross-appeal.

## FACTS

On May 20, 1980, following public hearings, Oxnard approved a proposed LUP, which permitted residential development in Oxnard Shores, and submitted it to the South Central Regional Coastal Commission (Regional). Regional approved and forwarded the LUP to the Commission on September 19, 1980. On July 21, 1981, the Commission certified the LUP on condition that its provisions be revised to improve public access to the beach in conformity with the California Coastal Act of 1976. (Pub. Resources Code, § 30000 et seq., Coastal Act.)

On September 21, 1981, SOS filed a petition for a writ of administrative mandamus (Code Civ. Proc., § 1094.5)[1] directing the Commission to set aside and vacate its decision as to Oxnard Shores. SOS alleged that Oxnard Shores was within 100 year flood and storm wave run-up areas and Commission planners had evidence that the area was likely to suffer additional erosion. Therefore, residential development would be inconsistent with coastal protection policies (Coastal Act, §§ 30253, 30211, 30212). In particular, SOS alleged that: (1) a substantial setback from the mean high tide line was required for new construction in the area which was subject to further beach erosion, and (2) prescriptive easements for public use of the beach might be extinguished because access would be restricted during high tides by beachfront residences.

On October 2, the court issued an alternative writ directing the Commission to set aside its decision or to appear and show cause on November 16, 1981. On October 28, OSOLOA filed a complaint in intervention seeking discharge of the alternative writ and denial of the peremptory writ. OSOLOA alleged that its members were permitted by the LUP to construct single-family residences on their oceanfront lots, and any action setting aside the Commission's decision would deprive them of economic development of their property and constitute a taking without just compensation. (Cal. Const., art. I, § 19.)

On January 8, 1982, the Commission conducted a public hearing on the application of OSOLOA member Emanuel Gyler for a permit to build a single-family home on his oceanfront lot. Following testimony relating to residential construction and public beach access, some commissioners ex-

---

[1] All statutory references hereafter are to the Code of Civil Procedure unless otherwise specified.

pressed doubt about allowing beachfront construction on Oxnard Shores. The hearing on the permit application was adjourned. Because of the alternative writ, the Commission convened in executive session to consider its prior decision.

On January 21, 1982, the Commission set aside its original July 1981 decision. On January 22 it filed a return vacating the conditional certification as to Oxnard Shores in compliance with the writ. The return stated: "First, review of the record of the public hearing on that matter, in light of the allegations and arguments contained in the Petition for Writ of Mandate, called into serious question the correctness of the Commission's analysis and application of geological evidence presented at the hearing; second, review of the record also raised substantial questions concerning the propriety of the Commission's interpretation and application of the Coastal Act with respect to this evidence." A supplemental return was filed in April stating that a public hearing would be deferred pending Oxnard's resubmission of the LUP.

On May 20, the court granted OSOLOA's motion to strike the return and to restrain the Commission from setting aside its decision pending resolution of the litigation. On July 28, at the Commission's request, the court made a "clarification" order that stated: (1) the returns were stricken because the Commission lacked authority to vacate its final decision after 60 days, or to set it aside after OSOLOA intervened, and (2) although the motion did not raise the issue, the court upon request would hold the Commission's January 1982 action invalid.

On November 23, 1982, OSOLOA accepted this invitation and by way of a supplemental complaint requested a ruling that the Commission's action to reconsider its original decision was invalid. Not surprisingly, the trial court on cross-motions for summary adjudication, ruled that the Commission's action vacating its earlier decision was invalid.

On March 16, 1983, OSOLOA filed a motion to discharge the alternative writ and dismiss the SOS petition because no issues were presented for trial. The court had entered an order October 12, 1982, which required SOS to file the administrative record by January 17, established a briefing schedule beginning February 15, and set trial for April 4. OSOLOA alleged that SOS had not yet either paid for or filed the administrative record and that without the record, SOS could not show the insufficiency of the evidence to support the decision or overcome the presumption that the Commission regularly performed its official duty. SOS argued that the Commission's compliance rendered the administrative record irrelevant.

On June 22, 1983, the trial court granted OSOLOA's motion. The court stated, inter alia, that while trial was continued pending receipt of the administrative record, the Commission filed a return purporting to vacate its decision without a hearing, solely as to Oxnard Shores, on a "review of the record." The court ordered the return stricken because no record had been prepared and declared the Commission's action invalid. In the absence of the administrative record, the matter was governed by the presumption that the Commission proceedings were "regularly performed" and supported by the evidence (Evid. Code, § 664; *Gong v. City of Fremont* (1967) 250 Cal.App.2d 568, 573-574 [58 Cal.Rptr. 664]) and there was no basis to issue a peremptory writ of mandate. The court therefore discharged the alternative writ, denied the peremptory writ, dismissed the SOS petition, reaffirmed its orders striking the Commission's returns to the alternative writ, and awarded costs to OSOLOA and Oxnard.

After judgment, OSOLOA moved for orders allowing attorney's fees against the Commission and SOS on the "private attorney general" theory. (Code Civ. Proc., § 1021.5.) The court denied both motions.

### DISCUSSION

SOS contends that the trial court erred in striking the returns and that the Commission's valid compliance with the alternative writ rendered the peremptory writ proceedings moot.

### I

The alternative writ of mandamus issued on SOS' timely verified petition for judicial review under section 1094.5 as authorized by section 30801 of the Coastal Act. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].) Administrative mandamus (§ 1094.5) provides for judicial review of an agency decision resulting from a proceeding in which "(1) by law a hearing is required to be given, (2) evidence is required to be taken, and (3) the determination of the facts is the responsibility of the administrative agency." (§ 1094.5, subd. (a); *Gong v. City of Fremont, supra,* 250 Cal.App.2d 568, 572.)

Because section 1094.5 supplements the existing law of mandamus, the same principles and procedures are applicable to both traditional and administrative mandamus. ". . . administrative mandamus did not thereby acquire a separate and distinctive legal personality. It is not a remedy removed from the general law of mandamus or exempted from the latter's established principles, requirements and limitations." (*Grant v. Board of Medical Examiners* (1965) 232 Cal.App.2d 820, 826 [43 Cal.Rptr. 270].)

". . . mandamus pursuant to section 1094.5, commonly denominated 'administrative' mandamus, is mandamus still. . . . The full panoply of rules applicable to 'ordinary' mandamus applies to 'administrative' mandamus proceedings, except where modified by statute. . . ." (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 673-674 [170 Cal.Rptr. 484, 620 P.2d 1032].) The established mandamus procedures and rules of pleading (§ 1109) govern proceedings to obtain judicial review of administrative agency actions. (*Felice* v. *Inglewood* (1948) 84 Cal.App.2d 263, 267 [190 P.2d 317]; *Scannell* v. *Wolff* (1948) 86 Cal.App.2d 489, 492 [195 P.2d 536].)

■ The court will issue an alternative writ when the petition sufficiently alleges a cause of action which, if proven, could lead to the issuance of a final or peremptory writ. (*Joerger* v. *Superior Court* (1934) 2 Cal.App.2d 360, 363 [37 P.2d 1084].) Administrative proceedings should be completed before the issuance of a judicial writ. (*McPheeters* v. *Board of Medical Examiners* (1947) 82 Cal.App.2d 709, 717 [187 P.2d 116].) The writ is not a final court adjudication but is merely an order for the agency to show cause or, in the "alternative," to comply. The agency is placed on notice that petitioners have made a sufficient showing to cast doubt upon the validity of its decision. Although it may be expected that the agency will file an answer to the writ, compliance is among the acceptable responses (§§ 1087, 1089, 1104, 1109), and it terminates the litigation. (*George* v. *Beaty* (1927) 85 Cal.App. 525, 529 [260 P. 386].)

■ When the agency files a return which indicates compliance with the alternative writ, the petition is subject to dismissal for mootness. (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666 [56 Cal.Rptr. 265, 423 P.2d 193].) ". . . [I]f the respondent has complied with the petitioner's demands after issuance of the alternative writ, the writ has accomplished the purpose of the mandamus proceedings and the petition should be dismissed as moot. [Citations.] The rationale is, 'No purpose would be served in directing the doing of that which has already been done.' [Citations.] In *George* v. *Beaty,* 85 Cal.App. 525 [260 P. 386], the court said: '[T]he remedy of *mandamus* will not be employed where the respondents show that they are willing to perform the duty without the coercion of the writ. . . . "'*Mandamus* will not issue to compel the doing of an act which has already been done, *or which the respondent is willing to do without coercion*'. . . ."' (P. 529.) '[W]here the return to the alternative writ shows a compliance therewith, the petition will be dismissed.' (P. 532.)" (*Id.*, at p. 671.)

■ It is true, as OSOLOA argues, that in the absence of express statutory authority, an administrative agency may not change a determination made on the facts presented at a full hearing once its decision has become final. (*Olive Proration etc. Com.* v. *Agri. etc. Com.* (1941) 17 Cal.2d 204,

209 [109 P.2d 918].) Therefore, at the time the petition was filed the Commission lacked authority to modify or revoke its original decision, which had become final. ■ It does not follow that the Commission was without power to comply with a judicial alternative writ.

The SOS petition did not incorporate the administrative record, but it alleged with specificity the ways in which the Commission's original decision violated the policies expressed in the Coastal Act. The court determined that a sufficient showing was made and the alternative writ issued 10 days after the petition was served on the Commission and Oxnard. (§§ 1088, 1107.) The writ commands "the party to whom it is directed immediately after the receipt of the writ, or at some other specified time, to do the act required to be performed, ·or to show cause before the court at a time and place then or thereafter specified by a court order why he has not done so." (§ 1087.)

The alternative writ of mandamus differs from its counterpart in prohibition, which forecloses all agency action pending hearing to determine the necessity for a permanent injunction. (§ 1104.) To the contrary, the alternative writ of mandamus orders the party to whom it is directed to take action in compliance "or" to show cause. (§ 1087.) The Commission was thereby authorized to determine whether to defend its original decision or comply with the writ until it was quashed or discharged. ■ The presumption that the Commission acted regularly and in the public interest in reaching its original decision applies equally to its action complying with the writ. (Coastal Act, § 30004, subd. (b).) This presumption is not affected by an interim change in the membership on the Commission, as OSOLOA argues.

■ Oxnard attempts to differentiate administrative mandamus (§ 1094.5) requesting a judicial order to vacate a final administrative decision, from traditional mandamus (§ 1085) seeking a judicial order to compel performance of a ministerial act. Because the Commission here performed an adjudicatory function (*Yost* v. *Thomas* (1984) 36 Cal.3d 561 [205 Cal.Rptr. 801, 685 P.2d 1152]), Oxnard argues that procedural due process requires notice and a hearing before its decision can be vacated. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134].) Administrative mandamus, however, is a statutory procedure for initiating judicial review of an agency decision which is otherwise accorded a presumption of regularity. Although the agency may defend its decision, neither statutory authority nor judicial precedent require that response. Furthermore, in the absence of an express requirement that a public hearing be conducted, due process is not violated when an agency obviates judicial review by vacating its decision in voluntary compliance with the writ.

■ OSOLOA argues, nevertheless, that in view of the constitutional issues affecting the property interests held by the interveners, the Commission was required to extend full procedural due process, including a public hearing, before vacating its decision. The presence of an intervener, however, does not bar agency compliance with a judicial order in the form of an alternative writ.

The allegations of OSOLOA's complaint established that its members were entitled to intervene because their property interests were affected by the Commission's decision. (*Hospital Council of Northern Cal.* v. *Superior Court* (1973) 30 Cal.App.3d 331, 336 [106 Cal.Rptr. 247]; *Linder* v. *Vogue Investments, Inc.* (1966) 239 Cal.App.2d 338, 343-344 [48 Cal.Rptr. 633].) ■ The ability of intervenors to control the litigation is, nonetheless, circumscribed because they are bound by the status of the proceedings at the time of intervention. (*Linder* v. *Vogue Investments, Inc., supra,* 239 Cal.App.2d at p. 344; *Townsend* v. *Driver* (1907) 5 Cal.App. 581 [90 P. 1071].) Intervenors, therefore, may not retard the principal suit, delay trial, or change the position of the parties. (*Hibernia etc. Society* v. *Churchill* (1900) 128 Cal. 633, 636 [61 P. 278].)

■ When OSOLOA intervened, the alternative writ had already issued and OSOLOA did not take immediate action to recall, discharge, or otherwise stay operation of the writ. (*Marc Bellaire, Inc.* v. *Fleischman* (1960) 185 Cal.App.2d 591, 597 [8 Cal.Rptr. 650].) Because the mere presence of an intervener does not stay operation of the alternative writ, the Commission still retained the option of compliance. After the Commission's return was filed, the court had no further authority, the matter was moot, and the third party interveners could not compel the court to take further action. When a return to the writ is filed indicating compliance with the court's order, there is no need for the court to make a further determination concerning the peremptory writ.

Moreover, the desire of the members of OSOLOA to build homes on their oceanfront lots did not turn into a constitutional right because of the Commission's original decision. (Cal. Const., art. I, § 19.) ■ A California property owner has no vested right in an existing or anticipated land use plan, designation or zoning classification. (*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 516 [125 Cal.Rptr. 365, 542 P.2d 237], cert. den., 425 U.S. 904 [47 L.Ed.2d 754, 96 S.Ct. 1495]; *Cormier* v. *County of San Luis Obispo* (1984) 161 Cal.App.3d 850 [207 Cal.Rptr. 880].) Nor has he a cause of action for unconstitutional taking or damaging of his property due to the adoption of particular conditions for development (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25], affd. (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138]) or any portion of

an LUP. (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 121 [109 Cal.Rptr. 799, 514 P.2d 111].) An exception may be made for a developer who has acquired a vested interest in completion of a public construction project by a good faith investment of time or money. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546], cert. den., 429 U.S. 1083 [51 L.Ed.2d 529, 97 S.Ct. 1089]; *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835 [116 Cal.Rptr. 487].)

██ The paramount concern of the Commission is the protection of the coastal area for the benefit of the public. The predominant goal of the Coastal Act is the protection of public access and preservation of the fragile coastal ecology from overzealous encroachment. The objectives of the Coastal Act are succinctly stated by Justice Mosk in *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 162-163 [188 Cal.Rptr. 104, 655 P.2d 306] as follows:

"Growing public consciousness of the finite quantity and fragile nature of the coastal environment led to the 1972 passage of . . . an initiative measure entitled the California Coastal Zone Conservation Act (the 1972 Coastal Act). (Former Pub. Resources Code, §§ 27000-27650.) [¶] . . . [¶] One of the stated purposes of the 1972 Coastal Act was to increase public access to the coast. The 1972 Coastal Act was an interim measure, destined by its own terms to expire at the beginning of 1977. It authorized the interim coastal commission to prepare a study summarizing the progress of planning in the coastal zone and delineating goals and recommendations for the future of California's shoreline for the guidance of the Legislature. The study, labeled the California Coastal Plan, was completed in December 1975 and submitted to the Legislature, which used it as a guide when drafting the California Coastal Act of 1976 (the Coastal Act). (Pub. Resources Code, § 30000 et seq.) The Coastal Act created the California Coastal Commission (the Commission) to succeed the California Coastal Zone Conservation Commission. One of the objectives of the 1976 version of the Coastal Act was to preserve existing public rights of access to the shoreline and to expand public access for the future."

██ We presume that the Commission acted in accordance with the Coastal Act objectives when it set aside its prior decision. Because the Commission was not required under the circumstances of this case to conduct a public hearing to determine its response to the writ, its action did not deprive interveners of procedural due process.

██ The Coastal Act prescribes procedures for Commission approval and certification of land use plans submitted by local governments of coastal

area communities. (Pub. Resources Code, § 30512, subd. (e).) In this case, Oxnard prepared and submitted an original LUP, which Regional had approved, and which was presented for the first time to the Commission for approval and certification. (Pub. Resources Code, §§ 30511, 30513.) The Commission conditionally certified the LUP and returned it to Oxnard with instructions to make the required provisions for public beach access. (Pub. Resources Code, § 30500, subd. (a).)

Coastal Act section 30512, subdivision (d) states: "If the Commission refuses certification, in whole or in part, it shall send a written explanation for such action to the appropriate local government and regional commission. A revised land use plan may be resubmitted directly to the Commission for certification." The Commission's decision notified Oxnard of the modifications that should be made before the LUP was resubmitted to the Commission for certification. The returns filed by the Commission, however, vacated the conditional certification of the LUP as to Oxnard Shores and thus reopened the entire subject of development on oceanfront property. We conclude from our analysis of the Coastal Act that the public hearing process shall be initiated anew as to Oxnard Shores upon resubmission of the LUP.

The Commission adopts its own rules and regulations to carry out the purposes of the Coastal Act. (Pub. Resources Code, § 30333.) The Coastal Act requires the Commission to obtain the full and adequate participation by all interested groups and the public in its works and programs. (Pub. Resources Code, § 30339, subds. (b), (d).) Among other things, the Coastal Act seeks to insure open consideration and effective public participation in Commission proceedings. (Pub. Resources Code, § 30006.)

A public hearing is required at the time the Commission considers an original submission of a land use plan. Although the Coastal Act is not explicit in this regard, the reasonable inference from the statutory scheme is that the portion of the Oxnard LUP dealing with Oxnard Shores must, upon resubmission, be treated the same as an original submission. It will, therefore, receive a hearing with public participation and the full panoply of procedural safeguards. (Pub. Resources Code, § 30512.)

In view of our determination that the Commission's action in compliance with the alternative writ was a valid exercise of its authority, we do not reach the additional issues relating to the Commission's action or OSOLOA's supplemental complaint.

 SOS was improperly ordered to pay costs to OSOLOA, which is an "unincorporated association of residents within Oxnard Shores," and to

Oxnard pursuant to section 1032. (*City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527 [183 Cal.Rptr. 86, 645 P.2d 137], judg. vacated and cause remanded (1983) 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], reiterated (1983) 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072].) This order is stricken.

■ The trial court improperly ordered the returns stricken pursuant to OSOLOA's motion on May 20, 1982, and held the Commission's action was invalid on February 23, 1983. The order and judgment are, and each is, reversed.

## II

■ OSOLOA on cross-appeal contends that the trial court abused its discretion in denying motions to require SOS, Samuel Goldfarb or the Commission to pay its attorneys fees on a "private attorney general" theory. (§ 1021.5.) These motions were denied because the court concluded that an order for payment of fees would unconstitutionally infringe the rights of SOS and its individual members to petition a governmental entity for redress of grievances. (Cal. Const., art. I, § 3; *City of Long Beach* v. *Bozek, supra,* 31 Cal.3d 527, 534.) The court further found that OSOLOA did not vindicate or enforce a right which conferred a significant benefit on the general public, since its members merely desired to construct residences on their oceanfront lots. (*Pacific Legal Foundation* v. *California Coastal Com., supra,* 33 Cal.3d 158, 167.) The public's interests were represented by Oxnard and the Commission. (See *Grimsley* v. *Board of Supervisors* (1985) 163 Cal.App.3d 672, 678 [209 Cal.Rptr. 587] and 169 Cal.App.3d 960 [213 Cal.Rptr. 108]; *People* ex rel. *Deukmejian* v. *Worldwide Church of God* (1981) 127 Cal.App.3d 547, 556 [178 Cal.Rptr. 913].)

There was no showing that the litigation was necessary or that the lawsuit placed a burden on OSOLOA members out of proportion to their individual interests in the matter. (*County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 [144 Cal.Rptr. 71]; *Woodland Hills Residents Assn.* v. *City Council* (1979) 23 Cal.3d 917, 941 [154 Cal.Rptr. 503, 593 P.2d 200]; see also 34 A.L.R.4th 457 §§ 12-14.) Here, the public benefit, if any, was incidental by comparison to the purely private advantage for the members of OSOLOA. (*Schwartz* v. *City of Rosemead* (1984) 155 Cal.App.3d 547 [202 Cal.Rptr. 400]; *Beach Colony II* v. *California Coastal Com.* (1984) 151 Cal.App.3d 1107 [199 Cal.Rptr. 195] and (1985) 166 Cal.App.3d 106 [212 Cal.Rptr. 485].)

On appeal, OSOLOA's claim for attorneys fees has become moot because OSOLOA is not a successful party as required by section 1021.5. The judgment denying attorneys fees is affirmed.

The judgment declaring the Commission's action invalid is reversed and the court is instructed to accept the returns to the alternative writ which were improperly stricken.

The judgment in all other respects is affirmed because the Commission's action in compliance with the alternative writ rendered the SOS petition moot.

Each party to bear its own costs on appeal.

Stone, P. J., and Abbe, J., concurred.

Petitions for a rehearing were denied April 23, 1986, and respondent's petition for review by the Supreme Court was denied June 18, 1986.