Filed 6/14/22  Turley v. Chipotle Services CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TANIKA TURLEY,<br><br>        Plaintiff and Respondent,<br>v.<br>CHIPOTLE SERVICES, LLC,<br><br>        Defendant and Respondent;<br>JOSH BARBER,<br><br>        Intervener and Appellant. | A162513<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-15-544936) |

Josh Barber appeals an order denying his request to intervene in this action in which Tanika Turley settled, on behalf of a class of nonexempt employees, various causes of action for violations of the Labor Code, as well as a related cause of action under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.), against Chipotle Services, LLC (Chipotle). Barber had filed a similar putative class action against Chipotle on behalf of nonexempt managerial employees. Turley and Chipotle argue, among other things, that the appeal is moot in light of the finality of the judgment entered in this action and the distribution and acceptance of all

_____

[1] All statutory references are to the Labor Code unless otherwise noted.

1

settlement funds by the state and class members. We agree and, accordingly, shall dismiss the appeal.[2]

## Background

In March 2015, Turley, a former nonexempt employee of Chipotle, filed a class action complaint against Chipotle in San Francisco County Superior Court on behalf of a putative class of all nonexempt California employees (the *Turley* action). As amended in July 2015, the complaint in this action alleged seven causes of action: (1) failure to make timely payment of wages (§§ 201–203); (2) failure to provide compliant wage statements (§ 226, subd. (a)); (3) failure to provide proper response to document request (§ 226, subds. (b), (c) & (f)); (4) failure to provide proper rest breaks (§ 226.7); (5) failure to provide proper meal breaks (§ 226.7); (6) disgorgement of profits and injunction under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.); and (7) a PAGA claim for civil penalties.

In July 2016, Barber, a former nonexempt managerial employee of Chipotle, filed a class action complaint against Chipotle in Orange County on behalf of a putative class of nonexempt managerial employees in California. As amended, Barber's complaint alleged nine causes of action: (1) failure to pay all regular and overtime wages (§§ 510, 1194, 1198); (2) failure to pay minimum wages (§§ 1194, 1194.2, 1197, 1197.1); (3) failure to provide meal periods (§§ 226.7, 512); (4) failure to provide rest periods (§ 226.7); (5) failure to provide accurate wage statements (§§ 226, 1174–1175); (6) failure to pay all wages due upon ending of employment (§§ 201–203); (7) failure to reimburse work expenses (§ 2802); (8) violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.); and (9) civil penalties under PAGA.

---

[2] Respondents' request for judicial notice is denied.

2

In November 2018, the court in this *Turley* action certified a class with respect to a single cause of action. The class was defined to include all individuals who were hired by Chipotle before August 1, 2014, and thereafter issued wage statements for services performed at any time from October 2, 2014, to March 29, 2015.

After mediation in October 2019, an agreement to settle this action was submitted to the court for approval. The agreement defined the settlement class to include "all current and former non-exempt employees of [Chipotle] that worked in California at any time between October 1, 2014 and the earlier of March 1, 2020 or preliminary approval ('Class Period')." The class was broken into two separate sub-classes: the "Wage Statement Class" composed of approximately 7,000 "current and former nonexempt employees of [Chipotle], who were hired before August 1, 2014 and who worked in California at any time during the Class Period"; and (2) an additional "Omnibus Class" consisting of approximately 70,000 more class members who were not part of the Wage Statement Class. Both proposed classes included nonexempt, managerial employees.

As part of the settlement agreement, Chipotle and Turley stipulated to the filing of a second amended complaint which, among other things, added causes of action for failure to pay proper overtime (§§ 510, 1194, 1198), failure to provide proper minimum wage (§§ 1194, 1194.2, 1197, 1197.1), and failure to reimburse necessary expenses (§ 2802).

Under the proposed settlement agreement, in exchange for a release of all claims by members of both the Wage Statement Class and the Omnibus Class, Chipotle agreed to pay approximately $3 million in cash and food vouchers, with $1.75 million going to the Wage Statement Class, up to $800,000 in food vouchers or cash to the Omnibus Class members (who would

3

each receive either a $12 Chipotle meal voucher or $6 in cash), and the balance for attorney fees and expenses, claims administration, service awards not to exceed $10,000 each for Turley and another class representative, and a $10,000 PAGA payment to the State of California.

In February 2020, Barber filed an application to intervene in this action. The court denied the motion, noting that Barber, as a member of the Wage Statement Class, could adequately protect his interests by opting out or objecting to the settlement.

In March and July 2020, the court twice denied motions for preliminary approval of the settlement. In its March order, the court questioned, among other things, whether one subclass was being "unfairly benefitted" at the expense of the other subclass. It also questioned whether the named plaintiff was an adequate representative for the omnibus class because her $10,000 enhancement payment far exceeded that of the 70,000 employees who would receive either $6 cash payment or a $12 meal voucher. In its July order, the court reiterated its concerns regarding the treatment of the omnibus class.

In September 2020, Turley filed a third motion for preliminary approval of a revised settlement agreement. The revised agreement eliminated from the scope of the complaint and the settlement the claims of the Omnibus Class. The agreement released only the claims of the roughly 7,000 members of the Wage Statement Class. The revised settlement agreement also excluded from the Wage Statement Class anyone "who had a pending arbitration or lawsuit against defendant as of August 1, 2020." As a result, Barber was excluded from the revised settlement class because of his pending lawsuit.

Under the revised settlement agreement, the $1.75 million gross settlement amount would be used to pay attorney fees in an amount not to

4

exceed 33.33 percent ($583,333), recoverable costs not to exceed $25,000, settlement administration fees not to exceed $50,000, a PAGA payment to the state for $50,000, a service award to Turley not to exceed $2,500, and a "net settlement amount" of just over $1 million for payment of claims to the class members.

In October 2020, the court conditionally certified the settlement class and granted preliminary approval of the revised settlement agreement.

In January 2021, Barber filed a second application for intervention accompanied by proposed objections to the revised settlement agreement. On February 16, the trial court denied Barber's motion, finding that Barber did not have an interest in the litigation that supports intervention. Barber timely filed a notice of appeal from the order denying his application to intervene.

Thereafter, the court approved the settlement and entered judgment. Barber filed a motion to vacate the judgment, challenging the adequacy of Turley to represent the class and the fairness of the settlement. After the motion was denied, Barber timely filed a notice of appeal from the denial of his motion to vacate.

Barber's appeals were consolidated for briefing and decision. In his opening brief, Barber has advised that he is no longer pursuing his appeal of the denial of his motion to vacate. His request for dismissal of that appeal was granted and the appeal dismissed.

## Discussion

"A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief. [Citation.]' [Citation.] 'When no effective relief can be granted, an appeal is moot and will be

dismissed.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.)

The judgment entered in this case is now final. No party to the settlement has appealed the judgment or challenged the order approving the settlement and the settlement proceeds have been distributed. There are no further proceedings or approvals for which the court has reserved jurisdiction. By relinquishing his challenge to the denial of his motion to vacate, Barber has foregone any challenge to the judgment or to the order approving the settlement.[3]

Contrary to Barber's suggestion, his appeal from the order denying his motion to intervene did not affect the finality of the judgment. He argues, "although Barber's exclusion from the revised settlement class and the order denying his motion to intervene deprived him of standing to appeal directly from the final approval order or judgment, his appeal from the intervention order obviously calls into question the validity of the final approval order." He suggests, without citation to relevant authority,[4] that if this court were to reverse the order denying his motion to intervene, we could direct the trial

---

[3] In *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 72–73, this court held, contrary to a decision from the Second Appellate District (*Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, 967-968), that a PAGA representative in one action has standing to move to vacate a judgment following a settlement of another PAGA action with overlapping PAGA claims and therefore has standing to appeal that judgment and challenge final approval of the settlement. Our decision was filed 15 days before Barber filed his opening brief waiving any challenge to the denial of his motion to vacate the judgment.

[4] Barber's citation to Civil Code section 43 and *Continental Cas. Co. v. Phoenix Constr. Co.*(1956) 46 Cal.2d 423, 440–441, regarding the court's general authority to reverse with directions, provides no such authority.

court to set aside the judgment and reconsider its order approving the settlement. We disagree.

Because the judgment is now final, the court has no authority to set it aside or to order the beneficiaries of the settlement to return whatever proceeds they may have received. (See 2 Witkin, Cal. Procedure (6th ed. 2022) Jurisdiction, § 344 ["Where, by lapse of time for appeal or other direct attack on the judgment (e.g., motion for new trial, motion to vacate) the cause becomes final, it is no longer pending and the court has no further jurisdiction of the subject matter."].) It has long been the rule that "[w]here the judgment in a cause, rendered in the trial court, has become final, an appeal from an order denying intervention in such cause will be dismissed, as a reversal of such order would be of no avail." (*Hindman v. Owl Drug Co.* (1935) 4 Cal.2d 451, 456; see also *Redevelopment Agency v. Commission on State Mandates* (1996) 43 Cal.App.4th 1188, 1198 [recognizing that appeal from denial of motion to intervene would be rendered moot by subsequent entry of judgment but exercising authority to resolve appeal that raised important legal question]; 9 Witkin, Cal. Procedure (6th ed. 2022) Appeal, § 781 ["a final judgment may render moot an appeal from a prior order"], citing *Hindman v. Owl Drug Co.*, *supra*, 4 Cal.2d at p. 456 and *Keefer v. Keefer* (1939) 31 Cal.App.2d 335, 337 ["subsequent judgment in another case, after consolidation for trial, rendered moot appeal from order denying change of venue in first case"].)

To the extent some cases have concluded that denial of a motion for intervention is not rendered moot by a subsequently entered judgement, those cases are distinguishable. In both *In re Veterans' Industries, Inc.* (1970) 8 Cal.App.3d 902 and *Linder v. Vogue Investments, Inc.* (1966) 239 Cal.App.2d 338, although the time for appeal of the judgment had passed, the

7

courts nonetheless retained the ability to provide the intervenor some effective relief. In *In re Veterans' Industries, Inc.*, *supra*, at pages 916–917, the judgment required that certain assets be placed in a blocked account and it reserved jurisdiction for the trial court to make further orders to implement and supplement the judgment pending outcome of appeal. In *Linder*, *supra*, at page 343, the time within which a party could move to set aside a default judgment had not lapsed, so that appellant, if permitted to intervene, could make such a motion. In this case, however, at this point there is no effective relief that can be provided even if it was error to deny intervention. Accordingly, we shall dismiss the appeal.

## Disposition

The appeal is dismissed.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.