[No. A045078. First Dist., Div. Four. Dec. 27, 1989.]

DINOSAUR DEVELOPMENT, INC., Plaintiff and Appellant, v. LEWIS H. WHITE et al., Defendants and Respondents.

COUNSEL

James E. Reed, Nichols, Catterton, Downing & Reed for Plaintiff and Appellant.

Pamela J. Platt, Platt, Boatwright, Adams & Bechelli and Boatwright, Adams & Bechelli for Defendants and Respondents.

OPINION

POCHÉ, Acting P. J.—The issue presented is this: If an agency of local government conditions its approval of a subdivision plan submitted by

landowner A on the construction of a road from the nearest public thoroughfare to the adjacent landlocked property of landowner B, can A require B to shoulder a portion of the road's construction costs? Our holding, which is limited to the peculiar situation presented, is that A does not have a cause of action against B for restitution.

## BACKGROUND

This appeal is from a judgment of dismissal entered after a general demurrer to a first amended complaint was sustained without leave to amend.[1] The posture of the appeal thus activates the rule that all proper factual allegations are accepted as true for the purpose of determining whether the plaintiff has, however imperfectly, pleaded enough to constitute a cause of action with some entitlement to relief. (*Blatty* v. *New York Times Co.* (1986) 42 Cal.3d 1033, 1040 [232 Cal.Rptr. 542, 728 P.2d 1177]; *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 496, fn. 2 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447].) The picture sketched by the salient allegations is delightfully simple.

Within the City of Pleasant Hill are two adjoining parcels of unimproved real property. One of the parcels is owned by plaintiff Dinosaur Development, Inc. The other is owned by defendants Lewis H. White and Elma Ruth White. The two parcels are "landlocked," lacking "access for ingress and egress to and from" Taylor Boulevard, which is "[t]he nearest thoroughfare for vehicular traffic."

Plaintiff applied to the Contra Costa County Community Development Department (the Department) for approval of a subdivision map reflecting plaintiff's plan to construct three single-family residences on its property. Plaintiff also requested approval of its proposal to construct a paved access road (apparently along the route of an existing unpaved "fire road") from Taylor Boulevard; the proposed access road would "terminate in a cul-de-sac in the approximate center" of plaintiff's property.

According to plaintiff, defendants, who plan to develop their property in a similar fashion, "demanded that the . . . Department . . . require that

---

[1] The notice of appeal identifies the appeal as being "from the Order . . . entered on December 23, 1988, . . . providing as follows: [¶] An Order dismissing the . . . action . . . ." The only order made on that date provides that "defendants' . . . demurrer to the First Amended Complaint is sustained without leave to amend." That order is not appealable. (*Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644, 651 [150 Cal.Rptr. 242, 586 P.2d 556].) "However, where no judgment has been entered, the appellate court may, and we do, amend the nonappealable order to make it an appealable judgment of dismissal and construe the notice of appeal as applying to that judgment." (*Adams Point Preservation Society* v. *City of Oakland* (1987) 192 Cal.App.3d 203, 204, fn. 1 [237 Cal.Rptr. 273].)

plaintiff ensure access" from Taylor Boulevard to defendants' property "as a condition of approving plaintiff's subdivision map." "As a direct result of defendants' demands" the Department approved plaintiff's subdivision map subject to the express condition that plaintiff " 'ensure legal access to the proposed access road' " to defendants' property.[2] Defendants refused to waive this condition or pay any part of the costs of constructing the proposed access road.

Plaintiff alleged that compliance with the condition would require plaintiff to "expend a substantial sum of money on construction" of the proposed access road and would also provide an exclusive benefit to defendants' property, which "will increase in value whether developed or not, in an amount not presently ascertained, which amount shall constitute the unjust enrichment of defendants at plaintiff's expense." Plaintiff further alleged that the "least costly" alternative means of complying with the condition "is to deed the corner of its property [abutting defendants' parcel] to the County of Contra Costa, obtain a right-of-way along the north border of its property adjacent to Taylor Boulevard, and otherwise complete the plans submitted in its application for the subdivision with a cul-de-sac located in the center of its property." Plaintiff prayed for damages in amounts equal to (1) "the increased value of defendants' property as a result of plaintiff's compliance" with the condition, and (2) the "costs to plaintiff of improvements benefiting defendants."

Defendants demurred to the complaint on the ground that any benefit that might accrue to them was not unjust enrichment in the legal sense, but rather an indirect and noncompensable incident of plaintiff's decision to improve its own property. After conducting a hearing on their general demurrer, the trial court agreed with defendants and made the order now under review on plaintiff's timely appeal. (See fn. 1, *ante.*)

## REVIEW

Although the word itself is never mentioned in its complaint, plaintiff is in essence pleading its entitlement to restitution. ■ Unjust enrichment, the term used by plaintiff, is synonymous with restitution. (See Goff & Jones, The Law of Restitution (1966) p. 12; 1 Palmer, The Law of Restitu-

---

[2] It appears from documents which were judicially noticed in connection with defendants' demurrer that plaintiff's proposed access road would proceed along approximately half of the northern boundary of plaintiff's parcel before turning into the interior of plaintiff's property. The condition imposed by the Department would appear to require plaintiff to extend the proposed road along the entire northern boundary of its parcel in order that an undeveloped right-of-way forming the western boundary of plaintiff's parcel could be used to provide a contiguous link between Taylor Boulevard and defendants' property (whose northeast corner abuts the southwest corner of plaintiff's parcel).

tion (1978) § 1.1, pp. 2-3; *id.* (1988 supp.) p. 3; Rest., Restitution (1937) § 1.) "[I]n any event, . . . there is no particular form of pleading necessary to invoke the doctrine" of restitution. (See *Frank* v. *Tavares* (1956) 142 Cal.App.2d 683, 689 [298 P.2d 887].)

The concept of restitution needs no translation from the legal to the vernacular. "It is said that 'The word "restitution" was used in the earlier common law to denote the return or restoration of a specific thing or condition. ■ In modern legal usage, its meaning has frequently been extended to include not only the restoration or giving back of something to its rightful owner, but also compensation, reimbursement, indemnification, or reparation for benefits derived from, or for loss or injury caused to, another. ■ The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. [¶] It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. As expressed by some authorities, the obligation to do justice rests upon all persons, natural and artificial; if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation.' " (*Lucky Auto Supply* v. *Turner* (1966) 244 Cal.App.2d 872, 885 [53 Cal.Rptr. 628].)

■ This expansive general principle is qualified by the rule that "the 'mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.' (Rest., Restitution, § 1, com. c.)" (*Marina Tenants Assn.* v. *Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 134 [226 Cal.Rptr. 321].) That portion of the Restatement comment just quoted is immediately followed by an exceedingly pertinent illustration: "Thus, one who improves his own land ordinarily benefits his neighbors to some extent, and one who makes a gift or voluntarily pays money which he knows he does not owe confers a benefit; in neither case is he entitled to restitution." The point is reiterated later in slightly different form. "A person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution." (Rest., Restitution, § 106.)

■ The parties' respective positions are readily foreseeable and easily stated. According to plaintiff, its entitlement to restitution is simple justice;

the road which plaintiff has in effect been ordered to confer on defendants is something that defendants expressly demanded, something that plaintiff would not otherwise provide, and something that will benefit no one but defendants. As defendants view the matter, it was only after plaintiff had decided to improve its property and thereby deprive them of their only route of access that the Department—not defendants—directed plaintiff to make alternate provision for defendants' access, a directive plaintiff can escape by dropping its proposed subdivision project. Defendants see themselves as the incidental beneficiaries of plaintiff's plan to improve its own land, with the Department acting to safeguard defendants' imperiled right of access.[3]

■ Witkin concisely summarizes: "[O]ne who confers benefits on another *officiously,* i.e., by unjustified interference in the other's affairs, is not entitled to restitution. It must ordinarily appear that the benefits were conferred by *mistake, fraud, coercion or request*; otherwise, though there is enrichment, it is not unjust." (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 97, p. 126 [original italics].)[4]

■ Mistake or fraud is not involved. Instead, plaintiff attempts to rely on the two other bases of recovery listed by Witkin. Plaintiff in effect submits that there is a request (albeit one routed through the Department) for the road from defendants, and coercion from the Department. But defendants made no direct request to plaintiff, nor are they coercing plaintiff to construct the access road. Plaintiff sees itself as not acting officiously to interfere in defendants' affairs; plaintiff would be perfectly happy to ignore defendants altogether. Any interference which may impend is, in plaintiff's view, "justified by the circumstances under which the interference takes place" (see fn. 4, *ante*) as an incident of its plan to improve its property. Just so, reply defendants; the fact that the dislocation of their status quo is incidental to plaintiff's plan absolves them of any obligation of restitution. But plaintiff perceives "a valid reason" for a restitution claim because any benefit it will confer on defendants is the direct consequence of governmental intervention.

---

[3] Defendants also contend that plaintiff's complaint is based entirely upon defendants' statements made during the course of proceedings before the zoning department, comments defendants assert are clothed with the absolute privilege of Civil Code section 47, subdivision 2. Because this issue was not raised as a ground for defendants' general demurrer, we do not address it. (See *Carman* v. *Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].)

[4] With respect to officiousness, the Restatement defines it as "interference in the affairs of others not justified by the circumstances under which the interference takes place. Policy ordinarily requires that a person who has conferred a benefit either by way of giving another services or by adding to the value of his land or by paying his debt or even by transferring property to him should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a valid reason for so doing." (Rest., Restitution, § 2, com. a.)

The parties do agree that their situation is without precedent. Although there is no authority directly on point, the precedential cupboard is not entirely bare.

In *Green Trees Estates, Inc.* v. *Furstenburg* (1963) 21 Wis.2d 193 [124 N.W.2d 90], the plaintiff subdivision developer sought restitution for costs incurred in installing curb, gutter, and street improvements required by municipal ordinance. The Supreme Court of Wisconsin rejected the developer's claim that the homeowners whose property values were enhanced by these additions enjoyed unjust enrichment. The court began by noting "the complete voluntary nature of the plaintiff's decision to have the improvements installed . . . . The plaintiff, by its own choice, without compulsion from the city and without the consent of the defendants, chose to proceed with the improvements. Indeed, it may fairly be said that the record demonstrates that the plaintiff had the work done for its *own* benefit . . . in order to facilitate the plaintiff's loan arrangements with the FHA." (*Id.* at p. 198 [124 N.W.2d at p. 92] [original italics].) After a review of authorities, including the Restatement, the court held: "In conclusion, we believe that the plaintiff in making these improvements did so without mistake, emergency, or compulsion; it acted for its own benefit and without requesting or receiving the approval of the defendants. It failed to protect itself by appropriate agreements with those whom it now seeks to charge. Under these circumstances, the defendants were enriched, but so far as this plaintiff is concerned not unjustly." (*Id.* at p. 199 [124 N.W.2d at p. 93].)

Closer to home is the earlier decision of *Major-Blakeney Corp.* v. *Jenkins* (1953) 121 Cal.App.2d 325 [263 P.2d 655]. It too involved a subdivider installing the same sort of improvements as in *Green Trees Estates,* also pursuant to the requirements of local government authorities. Unlike *Green Trees Estates,* the improvements were made to lots and streets abutting those lots owned by the defendants from whom the subdivider was seeking restitution. Affirming the trial court's judgment against the subdivider, the Court of Appeal stated: "The evidence and its reasonable inferences demonstrate that the improvements were undertaken as a part of plaintiff's own building program, that they were initiated without reference to any agreement with defendants concerning the properties here in dispute, that defendants at no time remotely suggested they would pay for or contribute to these improvements made adjacent to or abutting other properties they chanced to own. The whole situation negatives the idea that defendants were expected to participate financially, and any benefit that could possibly have flowed to defendants was incidental to plans and obligations to which plaintiff alone had committed itself. The general rule applicable, absent other equities, is that a party is not entitled to reimbursement for improvements voluntarily made to another's land in the absence of an express or

implied contract to pay. [Citations.] A related principle, particularly applicable to the instant case, is adopted by the Restatement of Restitution, section 106, in the following language: 'A person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution.' The courts of many jurisdictions support this proposition. [Citations.] A property owner who conceivably acquires some incidental benefit from an adjoining landowner's improvements made pursuant to the latter's private development plans is not required to account for the benefits so received. [¶] . . . The expenditures made and obligations paid were done exclusively in furtherance of plaintiff's own interest and to discharge commitments for which it alone was responsible." (*Major-Blakeney Corp.* v. *Jenkins, supra,* 121 Cal.App.2d at pp. 340-341.)

The situations in *Green Trees Estates* and *Major-Blakeney* are highly similar to that in which plaintiff and defendants are embroiled. Plaintiff, however, discerns a crucial difference in that here the governmental entity acted solely in response to defendants and in such a manner as to benefit no one but defendants. Plaintiff is correct that the role of the Department was not confined to promulgating standards of general application. Plaintiff is also justified in pointing to the tighter causal nexus between the benefit it may provide and defendants may receive. These factors are not exactly irrelevant, yet they furnish no sound basis for diverging from the conclusion reached in *Green Trees Estates* and *Major-Blakeney.*

The Department's involvement, unlike *Green Trees Estates* and *Major-Blakeney,* was not the sideline passivity of the disinterested lawmaker. Nevertheless, the Department's conduct, although unquestionably important to this entire episode, does not constitute coercion.[5] There being no vested right to own or develop property in a specific manner (see *Save Oxnard Shores* v. *California Coastal Com.* (1986) 179 Cal.App.3d 140, 151 [224 Cal.Rptr. 425]; *Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 253 [220 Cal.Rptr. 2]; *City of Carmel-By-The-Sea* v. *Board of Supervisors* (1977) 71 Cal.App.3d 84, 93, fn. 4 [139 Cal.Rptr. 214]), "[c]ourts have . . . granted broad discretion to local authorities to regulate residential land use in order to stabilize economic and social aspects of a neighborhood and to promote aesthetic considerations, family environments, and basic residential character." (*Schroeder* v. *Municipal Court* (1977) 73 Cal.App.3d 841, 849 [141 Cal.Rptr. 85]; see Gov. Code, §§ 66411, 66411.1.) As part of that discretion, government may impose conditions on the grant of permits or privileges. Such conditions do not amount

---

[5] Because the Department is not a party to this litigation between private parties, we express no opinion regarding whatever remedies, if any, plaintiff may have against any agency of the County of Contra Costa.

to compulsion because the property owner remains free either to accept or to reject them. (Cf. *South Dakota* v. *Dole* (1987) 483 U.S. 203, 210 [97 L.Ed.2d 171, 180, 107 S.Ct. 2793] and authorities cited; *Ivanhoe Irrig. Dist.* v. *McCracken* (1958) 357 U.S. 275, 295 [2 L.Ed.2d 1313, 1327-1328, 78 S.Ct. 1174].)

Viewed from this perspective, the issue of whether defendants have been benefited at plaintiff's expense must be subordinated to the cold hard fact of governmental power that has been deployed to safeguard defendants' right of access to the nearest public thoroughfare. (See *Bacich* v. *Board of Control* (1943) 23 Cal.2d 343, 349-350 [144 P.2d 818]; *Lexington Hills Assn.* v. *State of California* (1988) 200 Cal.App.3d 415, 431 [246 Cal.Rptr. 97].) Once that power is conceded, the question of precisely how or by whom it is triggered becomes irrelevant. Accordingly, the fact that the Department acted "as a directed result of defendants' demand," as plaintiff alleges, is not important. What is important is that it was a governmental agency which acted within the scope of its powers, and that its action arose within the context of an official proceeding initiated by plaintiff's request to be allowed to develop its property in a specified manner. If plaintiff complies with the Department's condition for approval of the subdivision, defendants will benefit.[6] But because the benefit will be incidental to plaintiff's proposed development, it will not be unjust enrichment requiring defendants to make restitution. (Rest., Restitution, § 1, com. c, § 2, com. a, § 106; *Green Trees Estates, Inc.* v. *Furstenburg, supra*, 21 Wis.2d 193 at pp. 198-199 [124 N.E.2d 90 at pp. 92-93]; *Major-Blakeney Corp.* v. *Jenkins, supra*, 121 Cal.App.2d 325 at pp. 340-341.) Plaintiff must view the expense of ensuring "legal access" required as the unavoidable cost of official approval for its proposed project. "[W]ithin the limits of the police power 'some uncompensated hardships must be borne by individuals as the price of living in a modern enlightened and progressive community.' " (*Morse* v. *County of San Luis Obispo* (1967) 247 Cal.App.2d 600, 603 [55 Cal.Rptr. 710] [citing and quoting *Metro Realty* v. *County of El Dorado* (1963) 222 Cal.App.2d 508, 518 [35 Cal.Rptr. 480]; accord *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 516 [125 Cal.Rptr. 365, 542 P.2d 237].)

In order to constitute it an appealable judgment, the order entered on December 23, 1988 (see fn. 1, *ante*) is modified by adding the following

---

[6]Plaintiff's allegation that compliance with the condition imposed by the Department will benefit only defendants loses much of its force when considered in conjunction with the further allegation that defendants intend to construct a development similar to that contemplated by plaintiff. If plaintiff completes its project and the access road, the benefits of the latter will inure to the advantage to purchasers of residences built on defendants' parcel, the public who may use the road to go to and from those residences, and quite possibly to purchasers of residences built on plaintiff's parcel who may see their property values enhanced by the adjacent development.

paragraph: "Plaintiff's First Amended Complaint on file herein is dismissed as against defendants Lewis H. White and Elma Ruth White." As so reconstituted, the judgment of dismissal is affirmed. Defendants shall recover their costs.

Channell, J., and Perley, J., concurred.