HONEYWELL, INC., Plaintiffs,

v.

SAN FRANCISCO HOUSING AUTHORITY, et al., Defendants.

No. C97–4314 TEH.

United States District Court, N.D. California.

April 12, 2001.

David C. Veis, Edward Muramoto, Robins Kaplan Miller & Ciresi, LLP, Los Angeles, CA, Thomas K. Christo, David J. Andrews, Hare & Chaffin, Boston, MA, for plaintiff.

Forrest E. Fang, Gary T. LaFayette, Kevin M. Clarke, LaFayette & Kumgai LLP, San Francisco, CA, John M. Kelson, Eric R. Dewalt, Lafayette & Kumagai, San Francisco, CA, for San Francisco Housing Authority.

Gail Killefer, Alex G. Tse, U.S. Attorney's Office, San Francisco, CA, for Andrew Cuomo.

Donald P. Margolis, Jennifer H. Small, City Attorney's Office, San Francisco, CA, K. Scott Dickey, San Francisco, CA, for City of San Francisco, San Francisco County Community Mental Health.

## ORDER

THELTON E. HENDERSON, District Judge.

This matter comes before the Court on plaintiff Honeywell, Inc.'s ("Honeywell") Motion for Judgement as a Matter of Law, or in the Alternative, For a New Trial pursuant to Federal Rules of Civil Procedure 50(b) and 59. In addition, the Court is in receipt of the parties' supplemental memoranda regarding plaintiff's Motion for Equitable Relief, which the Court denied in part and deferred in part in its order of August 31, 2000. Having carefully considered the parties' written arguments, and the entire record herein, the motions are denied in part and granted in part as set forth below.[1]

## I. BACKGROUND

Plaintiff brought this action alleging that (1) the San Francisco Housing Authority ("SFHA") had breached its contract with Honeywell by failing to pay for any of the goods and services provided, and (2) that SFHA had violated 42 U.S.C. § 1983 by failing to pay Honeywell 50 percent of the energy savings achieved, as a result of the contract, pursuant to 24 C.F.R.

---

1. A ruling on these matters was delayed in order to give the parties an opportunity to attempt settlement. At a status conference on March 19, 2001, the parties asked the Court to consider the motions on the papers without oral argument.

§ 990.107(f)(1). After a vigorously tried two-week trial, the jury entered a verdict in favor of SFHA on both counts. With respect to the contract claim, the jury found that (1) Honeywell and the SFHA had "agreed" that financing would be in place as a condition of the contract going into effect, (2) that there was a valid contract between Honeywell and the SFHA, and (3) that the SFHA did not breach the contract. With respect to the § 1983 claim, the jury found that SFHA did not intentionally deprive Honeywell of its rights under federal law.

Honeywell subsequently filed a Motion for Equitable Relief asking the Court to consider its claims for equitable relief and enter judgment in its favor. While the Court found that the circumstances of this case did not warrant an equitable judgment enforcing the payment terms of the contract, it stated that it could "discern no reason why principles of equity do not overwhelmingly favor requiring SFHA to pay Honeywell 50 percent of the savings achieved pursuant to the federal scheme SFHA has benefitted from." August 31, 2000 Order at 3–4. The Court, however, deferred ruling on this aspect of plaintiffs' equitable claim and ordered supplemental briefing. *Id.* at 4.

On October 2, 2000, plaintiff filed its Motion for Judgment as a Matter of Law or New Trial pursuant to Federal Rules of Civil Procedure 50 and 59. Plaintiff contends that (1) Honeywell is entitled to judgment as a matter of law on both the contract and section 1983 claims, and (2) that a new trial is necessary because the jury's verdict is internally inconsistent, and there is insufficient evidence to support the jury's verdict. The parties also filed their supplemental briefing on plaintiff's equitable claim.

## II. *LEGAL STANDARD*

A motion for judgment notwithstanding of verdict has been renamed a renewed motion for judgment as a matter of law. *See* Fed.R.Civ.P. 50(b). According to Rule 50(b), if a verdict is returned by the jury, the district court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. However, a renewed motion for judgment as a matter of law may not be considered unless it is preceded by a motion for the same relief at the close of all the evidence and filed no later than 10 days after the entry of judgment. Fed.R.Civ.P. 50(b).

■ In the Ninth Circuit, "[j]udgment as a matter of law is appropriate when the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's verdict." *Omega Envt'l, Inc. v. Gilbarco, Inc.,* 127 F.3d 1157, 1161 (9th Cir.1997), *cert. denied,* 525 U.S. 812, 119 S.Ct. 46, 142 L.Ed.2d 36 (1998); *see also Baker v. Delta Air Lines, Inc.,* 6 F.3d 632, 644 (9th Cir.1993) (court " 'must determine whether the evidence, considered as a whole and viewed in the light most favorable to the nonmoving party, reasonably can support *only* a verdict for the moving party' ") (emphasis original) (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir.1992)). In other words, judgment as a matter of law may be granted "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. . . ." Fed.R.Civ.P. 50(a)(1); *Juhnke v. EIG Corp.,* 444 F.2d 1323, 1325 (9th Cir.1971) (noting that directed verdict and motion for judgment notwithstanding verdict "are measured by the same standard as the latter is merely a renewal of the former") (citations omitted).

In considering a motion under Rule 50(b), "the district court is not free to weigh the parties' evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury." Wright & Miller, 9A FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 2524, 255–56 (1995) (internal citations omitted); *see Baker,* 6 F.3d at 644 (same); *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 877 (9th Cir.1984) ("Neither the district court nor this court may weigh the evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict."). As the Ninth Circuit has emphasized, where the evidence permits of conflicting inferences, the court is not at liberty to select an inference over one chosen by the jury:

> [W]e are "bound to view the evidence in the light most favorable to [the prevailing party] and to give [that party] the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962).... It is the jury, not the judge, which "weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts.... Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions because judges feel that other results are more reasonable." *Tennant v. Peoria & P.U. Ry.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944).

*Cockrum v. Whitney,* 479 F.2d 84, 86 (9th Cir.1973) (on motion for JNOV, reversible error for judge to choose an inference contrary to that drawn by the jury); *see also* Wright & Miller, 9A FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 2524 at 26 (1995) ("The fundamental principle is that there must be a minimum of judicial interference with the jury.").

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 59 gives the trial judge the power to prevent what she considers to be a miscarriage of justice. *Moist Cold Refrigerator Co. v. Lou Johnson Co.,* 249 F.2d 246 (9th Cir. 1957). A new trial may be ordered to correct manifest errors of law or fact, but "[t]he burden of showing harmful error rests on the party seeking the new trial." *Malhiot v. Southern California Retail Clerks Union,* 735 F.2d 1133 (9th Cir. 1984). A trial court may grant a new trial if the verdict is "contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1245 (Fed. Cir.1989) (quoting *Hanson v. Shell Oil Co.,* 541 F.2d 1352, 1359 (9th Cir.1976)).

It is insufficient that the district court would simply have reached a different verdict from the jury. *Richardson,* 868 F.2d at 1245. Although the judge may weigh the evidence and assess the credibility of witnesses, and need not view the evidence in a light most favorable to the moving party, "a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." *Landes Constr. Co. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir.1987) (citation omitted). If, on the other hand, having given full respect to the jury's findings and having reviewed the

entire evidence, the judge "is left with the definite and firm conviction that a mistake has been committed," a new trial should be granted. *Id.* at 1372 (citation omitted). *See also EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir.1997) (motion for new trial should only be granted if verdict is against great weight of evidence or it is quite clear that jury has reached seriously erroneous result).

### III. *PLAINTIFF'S CLAIM FOR EQUITABLE RELIEF*

The phrase "unjust enrichment" is "used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Dinosaur Dev., Inc. v. White*, 216 Cal.App.3d 1310, 1315, 265 Cal.Rptr. 525, 527 (1989) (citation omitted). The doctrine contemplates that "one person should not be permitted unjustly to enrich himself at the expense of another," and that appropriate restitution should be made where it would be just and equitable and where such action involves no violation or frustration of law or public policy. *Id.* (citation omitted). Having reviewed the parties' supplemental briefs, the Court is satisfied that Honeywell is entitled, under equitable principles of unjust enrichment to 50 percent of the savings realized by SFHA pursuant to 24 C.F.R. § 990.107(f)(1).

As explained in prior rulings, under governing federal law, SFHA receives funds from the United States Department of Housing and Urban Development ("HUD") for operations of housing units and for utilities consumption in particular. To encourage energy conservation, public housing authorities ("PHA"), such as SFHA, who contract for energy savings improvements, and obtain HUD approval of such contracts, can "freeze" their utilities consumption funding at current levels

for a certain period of time. This allows the PHA to continue receiving its current budget from HUD, despite realizing savings in energy costs achieved by the installation of energy efficient measures. Section 990.107(f)(1), however, requires that the PHA use at least "50 percent of the cost savings to pay the contractor."

In this case, Honeywell provided and installed energy efficient measures in certain units operated by SFHA pursuant to a contract between Honeywell and SFHA. SFHA then sought, and obtained from HUD, approval for a "freeze" on its utilities consumption funding, based on the Honeywell contract. As a result, SFHA has enjoyed financial savings—savings which, of course, derive directly and solely from the goods and services provided by Honeywell. At the same time SFHA has not paid Honeywell any monies for the goods and services received notwithstanding its obligation to use at least "50 percent of the cost savings to pay the contractor." 24 C.F.R. § 990.107. Rather, it has kept the entire "freeze benefits" to itself.

While SFHA contends, and the jury found, that SFHA is not contractually obligated to pay for the goods and services received—because the financing condition was not satisfied—this does not justify SFHA's refusal to share the "freeze" benefits with Honeywell, particularly given that it only obtained those benefits because of the Honeywell contract and the goods and services provided by Honeywell. Allowing SFHA to affirmatively represent to HUD that its contract with Honeywell entitles it to the "freeze," yet retain 100% of the "freeze benefits" while at the same time paying nothing for the goods and services received would allow SFHA to *unjustly* enrich itself at the expense of Honeywell. Indeed, as this Court previously observed, under these circumstances, principles of equity "overwhelmingly favor requiring SFHA to pay Honeywell 50 percent of the

savings achieved pursuant to the federal scheme SFHA has benefitted from." *See* August 31, 2000 Order at 4.

■ SFHA offers no justification for its refusal to share the "freeze benefits" with Honeywell. Rather, it argues that equitable claims for unjust enrichment cannot be maintained against a public entity, an argument this Court previously rejected (*see* July 7, 2000 Order at 4–6). The Court also rejects SFHA's arguments that (1) plaintiff is barred from bringing a claim under 42 U.S.C. § 1983 because a breach of contract claim is its exclusive remedy, and (2) Honeywell should be precluded from recovering equitable relief because it has "unclean hands," neither of which are supported by the law or the record. SFHA's final, and most feeble argument, is that it should be excused from sharing the savings because they are less than were guaranteed under the contract. As Honeywell points out, this issue is irrelevant to the question of what is the proper disposition of any savings that were in fact achieved pursuant to 24 C.F.R. § 990.107(f)(1).

■ At trial, Herb Lum, SFHA's Budget Manager, testified that using the correct form required by HUD, the recalculated figures for savings obtained from the first three years of the ten-year Honeywell contract were $508,113 for the year 1997, $318,907 for the year 1998, and $105,769 for the year 1999, for a total of $932,789 in savings for the years 1997–1999.[2] Accordingly, this Court concludes that Honeywell is entitled to a judgment on its equitable claim for 50 percent of these accrued savings in the amount of $466, 394.50 for the years 1997–1999.[3] It is further entitled to 50 percent of any savings reported to HUD with respect to years 2000 and later relating to the Honeywell contract so long as SFHA continues to solicit and obtain a "benefit freeze" from HUD, based on the Honeywell contract, pursuant to 24 C.F.R. § 990.107(f)(1).[4]

2. As Honeywell points out, these figures are lower than the $1.575 million in savings SFHA originally reported to HUD for the years 1997–98. Mr. Lum credibly testified, however, that in May or June of 2000 a HUD financial analyst, Wilbur Fong, had told him that SFHA should be using a different form to calculate the savings. Specifically, Mr. Lum explained that "We—the housing authority was using a overall general actual rate, but for the Honeywell dwellings, HUD wanted us to use the actual rates for the Honeywell Developments [sic]." Tr. 833. While the Court agrees that SFHA's decision to solicit a formal letter from HUD regarding the correct method of calculating savings in the middle of the trial suggests either poor preparation or questionable trial tactics, the Court concludes the substance of Mr. Lum's testimony is credible, and thus the lower figures represent the more accurate statement of the actual savings achieved from the Honeywell project.

3. Plaintiff urges the Court to require SFHA to pay plaintiff more than 50 percent of the savings. Given all of the surrounding circumstances, however, the Court is not persuaded that equitable principles demand this result.

4. With respect to savings for the year 2000 and future years, plaintiff urges the Court to enter a judgment of $6.3 million as the amount equal to 50 percent of the savings SFHA is projected to enjoy over the potential remaining years of the freeze (up to a total of 12 years). This figure assumes that the savings for the first three years were $1.575 million and that the savings over the next nine years would be identical to the savings experienced over the first three years. Alternatively, it urges the Court to award 50 percent of the $7 million in savings Honeywell guaranteed under the contract, i.e. $3.5 million.

The Court rejects both of these alternatives. First of all, there is no evidence that the savings in future years can be ascertained with any reasonable certainty from the savings already experienced. On the contrary, the evidence demonstrates a declining trend in savings. In addition, the project was not fully completed which could well impact projected savings. Second, it is clear that the federal regulation is structured to permit housing authorities to compensate contractors *as the savings are accrued* from the

## IV. PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW / NEW TRIAL

### A. Claim under 42 U.S.C. § 1983

Plaintiff argues that it is entitled to judgment as a matter of law, or in the alternative, a new trial, on its claim under 42 U.S.C. § 1983. This claim asserts that SFHA violated plaintiff's rights under 24 C.F.R. § 990.107(f)(1) to receive at least 50 percent of the savings achieved from the Honeywell contract. Although, as held above, plaintiff has already prevailed on its claim for equitable relief with respect to this issue, the Court concludes plaintiff is also entitled to a judgment as a matter of law on its § 1983 claim.[5] The jury instruction governing the § 1983 claim stated, in part, that:

> If you, the jury, find that there was a valid contract between Honeywell and the SFHA, then the court instructs you that the SFHA had a legal obligation under the governing federal regulations to pay Honeywell 50 percent of the energy savings achieved, as a result of the contract, up to the amount of the contract.

*See* Tr. 1401–02 (Instruction 34). The jury found that there was a valid contract, and SFHA does not dispute the sufficiency of the evidence to support this determination. Thus, the only remaining issues are (1) whether there were savings, and (2) whether SFHA intentionally deprived Honeywell of the right to those savings. With respect to the first issue, while the parties dispute the amount of the savings, the evidence was undisputed that savings occurred.

With respect to the second issue, the jury was instructed that:

> If there were savings, then you must determine whether the SFHA intentionally deprived Honeywell of the right to 50% of those savings.

*Id.* SFHA summarily asserts that "the issue of intent was a question of fact that was well within the jury's discretion to resolve in the SFHA's favor." SFHA Opp. at 4. A review of the record, however, demonstrates that there is simply *no* basis upon which the jury could possibly find that SFHA did not deliberately and thus intentionally fail to pay Honeywell 50 percent of the savings it identified from the Honeywell project. Indeed, SFHA took the position at trial that Honeywell was not entitled to any of the savings—not that the failure to pay was the result of inadvertence, negligence, mistake, or some other factor reflecting lack of intentional conduct.[6]

SFHA also argues that the jury was entitled to find in SFHA's favor on the § 1983 claim based on its findings relating to the breach of contract claim. Essentially, SFHA argues that because the jury found that the otherwise valid contract never went into effect because the financ-

---

"freeze" and not in advance. In short, it is designed to help SFHA pay for Honeywell's services out of *actual* savings, not anticipated savings. As part of its judgment, the Court will order that SFHA provide Honeywell a copy of any reports made to HUD relating to the Honeywell contract and make payment to Honeywell of 50 percent of any reported savings within 30 days of such reporting.

**5.** The Court notes that the relief sought on this claim is the same as that sought under Honeywell's claim for equitable relief with respect to "freeze benefits." The Court assumes, however, that plaintiff would not consider the § 1983 claim moot since it provides a vehicle for recovery of attorneys fees while the equitable claim does not. Accordingly, the Court reaches the merits of this issue.

**6.** In this regard the Court notes that specific intent to violate federal rights is not a necessary element under Section 1983 where the plaintiff was in fact deprived of such rights. *See Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

ing condition was never satisfied, that SFHA had no obligation, as a matter of law, to comply with the requirements of 24 C.F.R. § 990.107(f)(1). While, as discussed further below, the Court agrees with SFHA's interpretation of the jury's verdict on the breach of contract claim, its argument regarding the legal effect of the contract claim verdict on the § 1983 claim lacks merit.

As the Court instructed the jury, subsection § 990.107(f)(1) applies if there was a valid contract, which the jury so found. The fact that the jury also found that SFHA is not liable, under common law principles, for breach of contract—because the financing condition never occurred—does not, as a matter of law, also excuse SFHA from its statutory obligations under subsection 900.107(f)(1). Subsection 900.107(f) requires nothing more than "a contract." The fact that SFHA and Honeywell entered into an otherwise valid contract and indeed SFHA expressly represented to HUD that its contract with Honeywell entitled it to the "freeze benefits" is sufficient to obligate SFHA to the requirements imposed by subsection 900.107(f)(1).

Given the above, this Court concludes that "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's verdict" on plaintiff's claim under 42 U.S.C. § 1983. *See Omega Envt'l, Inc. v. Gilbarco, Inc.,* 127 F.3d 1157 at 1161; *Baker v. Delta Air Lines, Inc.,* 6 F.3d at 644 Accordingly, Honeywell is entitled to a judgment as a matter of law on its § 1983 claim under Fed.R.Civ.P. 50(b). The Court further finds that the amount of damages shall be as set forth in section III above.

### (2) *Breach of Contract Claim*

Honeywell contends that it is entitled to a judgment as a matter of law on its

breach of contract claim or a new trial. For the reasons discussed below, this aspect of plaintiffs' motion is denied.

### (a) *Judgment as a Matter of Law*

Plaintiff first argues that judgment should be entered in its favor on the contract claim because the contract was integrated as a matter of law, and without the added financing condition, there is no question but that SFHA breached the contract and plaintiff suffered damages. Plaintiff's integration argument is rejected for the same reasons expressed in the Court's August 31, 2000 order. In this regard, the Court notes that throughout the trial Honeywell vigorously asserted that financing was not a requirement of the deal while SFHA contended the opposite. Assessing the credibility of the witnesses was clearly critical to determining this central factual dispute of the case.

Plaintiff also argues that any separate oral agreement to make financing a condition of the agreement would be ineffective as a matter of law because SFHA could only enter into a contract with Honeywell through its governing Commission. SFHA does not argue, however, that there was a separate, *unauthorized,* oral agreement. Rather, SFHA argues that the Determination & Order ("D & O") issued *by the Commission* only intended to authorize the contract to go forward if financing was in place and that "everyone understood that." *See* Def's Opp. at 11. While the evidence in support of this contention may not be overwhelming, when viewed *most favorably to SFHA,* it is certainly sufficient to satisfy the Rule 50(b) standard.

The D & O was issued at a time when SFHA was in dire financial straits. It had just been taken over by HUD and was in no position to pay out $4.5—5 million within 150 days of work commencing absent

financing. Honeywell, a large, sophisticated company, was well aware of SFHA's troubled financial status. Against this backdrop, the D & O specifically stated that Honeywell must provide its services "with no fiscal impact" to the SFHA and that the project would "not require any initial capital expenditures from the SFHA." The jury could have found that the parties understood that this meant that the contract would not go forward absent financing—not just that SFHA would be reimbursed for its out-of-pocket costs by the end of the 12–year term of the contract through annual savings guaranteed by the contract. Notably, at the meeting in which the D & O was adopted, Jon Gresley, Executive Director of the SFHA, described the Honeywell deal, stating, *inter alia,* that Honeywell would arrange for financing and that the project would not require SFHA to pay out any money. Honeywell representatives and employees also made statements and took actions indicating that they understood that financing was a necessary prerequisite for the deal. As one example, Victor Flint, SFHA's sales representative testified that he knew that in some way financing would be required for the project to go forward. *See* Flint Tr. 249:4–8.

■ Honeywell also argues that it is entitled to judgment as a matter of law on the contract claim based on the jury's finding that the contract was "valid." There is no dispute, plaintiff emphasizes, that SFHA failed to make payments under the contract. Thus, the finding of a valid contract, plaintiff argues, necessarily requires a finding that the contract was breached as a matter of law. In support of this argument, plaintiff states that any financing condition was necessarily satisfied or excused because "[t]here was uncontradicted evidence that the SFHA never completed the third party financing because it [had] no intention of doing so and wanted something for nothing." Pl.'s Motion for Judg-

ment at 15 (citing Clamage Tr. 1213–1215). This assertion, however, was *not* undisputed; on the contrary, it was strenuously disputed. Moreover, as the Court noted in its August 31, 2000 order, Mr. Clamage "appeared to be little more than a 'hired-gun' for plaintiff." The jury was certainly not required to credit his testimony and could instead have found in favor of SFHA's contention that Honeywell proceeded with contract work at its own risk, knowing financing was not in place.

■ Finally, plaintiff argues that it is entitled to judgment on the contract claim because there was insufficient evidence to support the jury's finding that financing was a condition precedent, and even if there was sufficient evidence, the condition was (a) satisfied because SFHA received HUD financing, or (b) waived and/or excused by the conduct of SFHA. None of these arguments hold sway. First, for the reasons discussed above, the Court concludes that, viewing the evidence most favorably to SFHA, there was sufficient evidence to find that the parties mutually assented to the financing condition and thus support the jury's finding of a financing condition. Second, there was sufficient evidence for the jury to find that the HUD freeze did not satisfy the financing condition. Viewed most favorably to SFHA, the testimony showed that after the first year, SFHA accrued savings in the amount of $508,113 as a result of the HUD freeze This amount does not even approach the roughly $4.5 million due under the first five months of the contract. Third, the evidence does not compel a finding that SFHA waived or excused the financing condition.

Given all of the above, plaintiffs' motion for a judgment as a matter of law on the claim for breach of contract shall be denied.

(b) *New Trial*

 Plaintiff alternatively argues that it is entitled to a new trial on the breach of contract claim because the jury's answers to the verdict questions are irreconcilable. This Court disagrees for the reasons explained below.

The jury was instructed that, in order to prevail on its contract claim, Honeywell was required to show (1) the existence of a valid contract, (2) performance by Honeywell, (3) failure to perform by the SFHA, and (4) damages to Honeywell caused by the breach. As noted above, the jury found that (1) Honeywell and the SFHA "agreed" that financing would be in place as a condition of the contract going into effect, (2) that there was a valid contract between Honeywell and the SFHA, and (3) that the SFHA did not breach the contract.

Plaintiff argues that the jury's finding, that there was a valid contract between Honeywell and SFHA, is irreconcilable with its finding that there was no breach given that SFHA undisputably failed to make the payments required by the contract. Plaintiff, however, reads too much into the finding of a valid contract. A reasonable interpretation of the verdict is that while the jury found that both parties signed a valid contract (i.e. SFHA was authorized to sign the document, it constituted an accepted offer for which there is mutual consent and consideration), the contract never went into effect because the parties agreed it would only become effective if financing was secured and this condition precedent never occurred. Under this scenario, the jury could logically find that plaintiff had no obligation to perform

under the contract and thus did not "fail to perform" or breach the contract when it did not meet the payment schedule set forth in the contract.

Plaintiff argues, however, that this reading is improper because the jury was effectively instructed that a "valid" contract is also an "enforceable" contract because the § 1983 instruction instructed the jury that if there was a "valid contract" between Honeywell and the SFHA, then SFHA had a legal obligation under the governing federal regulations to pay Honeywell 50% of the energy savings achieved. *See* Tr. 1401. As discussed above, however, the issue whether SFHA was subject to the requirements of 24 C.F.R. § 990.107(f) is not interchangeable with the issue whether it is liable for breach of contract. Nor was the jury ever instructed that, for purposes of a breach of contract claim, the enforceability of a valid contract could not depend on another event. To the contrary, the jury was instructed that "A person who makes a conditional promise, supported by a sufficient consideration, is bound to perform only if the condition precedent occurs." [7]

 As the Ninth Circuit has made clear, "we do not find inconsistency [in jury verdicts] lightly." *Norris v. Sysco Corp.*, 191 F.3d 1043, 1048 (9th Cir.1999), *cert. denied*, 528 U.S. 1182, 120 S.Ct. 1221, 145 L.Ed.2d 1121 (2000). Rather, "[w]hen faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict." *Id.* (*quoting*

---

7. The Court also notes that its interpretation of the jury's verdict on the contract claim is not inconsistent with the verdict on the § 1983 claim. The jury could have found a "valid contract" for purposes of the contract claim but still denied recovery on the § 1983 claim because it concluded there was a lack of intent to deprive Honeywell of its rights. While, as found above, this conclusion is not supported by the evidence, the jury's verdicts on the contract claim and the § 1983 claim can be internally harmonized.

**1142**

*Toner v. Lederle Labs.*, 828 F.2d 510, 512 (9th Cir.1987) (citations omitted)). For the reasons explained above, the Court is satisfied that the jury's verdict can be harmonized and that its findings on the breach of contract claim are not internally inconsistent.[8] Accordingly, plaintiffs' motion for a new trial on its breach of contract claim shall be denied.

### V. *CONCLUSION*

Accordingly, and good cause appearing, it is HEREBY ORDERED that:

(1) Plaintiff's Motion for Equitable Relief, previously denied in part and deferred in part, *see* August 31, 2000 order, is now GRANTED IN PART consistent with this order. In particular, judgment shall be granted in Honeywell's favor on its claim that it is entitled, on equitable grounds, to recover 50 percent of the savings SFHA achieved on the Honeywell contract. Accordingly, plaintiff is entitled to recover 50 percent of these accrued savings in the amount of $466,394.50 for the years 1997–1999. It is further entitled to 50 percent of any savings reported to HUD with respect to years 2000 and later relating to the Honeywell contract so long as SFHA continues to solicit and obtain a "benefit freeze" from HUD, based on the Honeywell contract, pursuant to 24 C.F.R. § 990.107(f)(1). SFHA shall provide Honeywell a copy of any reports made to HUD relating to the Honeywell contract and shall make payment to Honeywell of 50 percent of any reported savings within 30 days of such reporting.

(2) Plaintiff's Motion for Judgement as Matter of Law, or in the Alternative for a New Trial, is GRANTED IN PART AND DENIED IN PART consistent with this order. Plaintiff is entitled to a judgment as a matter of law on its claim under 42

U.S.C. § 1983. Plaintiff's recovery under this claim shall be as set forth above in paragraph two. The motion is otherwise denied.

(3) A separate judgment shall issue simultaneously with this order.

**IT IS SO ORDERED.**

---

**8.** The Court also finds that the jury's verdict regarding the financing condition was neither "contrary to the clear weight of the evidence" nor such a "seriously erroneous result" so as to warrant a new trial under Fed.R.Civ.P. 59.